**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

RAFAEL MALDONADO-FALCON, ET AL.,

     Plaintiffs,

        v.

HOSPITAL ESPANOL AUXILIO MUTUO DE PUERTO RICO, INC., ET AL.,

     Defendants.

**Civil No. 12-1907 (SEC)**

**OPINION AND ORDER**

Before the Court are the defendant's motion for reconsideration (Docket # 43), the plaintiffs' opposition thereto (Dockets # 46), and their reply memoranda. Dockets # 55, 59. After reviewing the filings and the applicable law, the motion is **DENIED**.

**Factual and Procedural Background**

This diversity medical malpractice suit stems from the alleged misdiagnosis and inadequate treatment of Rafael Maldonado-Falcón. The plaintiffs are Maldonado-Falcón, and his daughter and son. The defendants are the doctors who treated Maldonado-Falcón, and the hospital where Maldonado Falcón sought treatment, Hospital Español Auxilio Mutuo de Puerto Rico, Inc. (Hospital).

A synopsis of the relevant facts — which are drawn from the pleadings and the uncontested documentary evidence on record, see Martínez v. Bloomberg LP, --- F.3d ---- 2014 WL 114252, at * 3 (2d Cir. Jan. 14, 2014) — suffices to set the stage for the analysis.[1] On May

---

[1] The Supreme Court recently held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens," Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, 134 S.Ct. 568, 580 (2013), rather than through a Rule 12(b)(6) motion, as determined by the First Circuit, see Silva v.

5, 2008, Maldonado-Falcón was admitted to the Hospital "with a diagnosis of pancreatic head mass and was discharged on June 15, 2008 with a diagnosis of pancreatic cancer . . . ." Docket # 6, ¶ 3. Though he underwent surgery during that period, his condition "did not improve and he continued experiencing pains in the abdominal area," id. ¶¶ 9-10, so on July 29, 2009 he was again admitted to the Hospital "in septic shock"; he was thereafter discharged in August 2009. According to the amended complaint, Maldonado-Falcón was subsequently admitted to the Hospital on September 10, 2009, and on October 29, 2009. Id. ¶¶ 11-12.

In January 2010, Maldonado-Falcón was transferred to another hospital in New York, where  doctors allegedly diagnosed him with "epigastric pain, a serious, infected abscess and liver inflammation and a severe depression." Id. ¶ 23. According to the amended complaint, the New York doctors said that he was "unlikely to have had pancreatic cancer, with negative tumor markers and a negative pancreatic biopsy report." Id. This suit followed in late 2012. Docket # 1. The plaintiffs claim medical malpractice and breach of the duty of care, asserting  a right to recover damages under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142.

In September 2013, the Hospital filed a motion to dismiss based on a forum-selection clause contained in a consent form that Maldonado-Falcón had signed on May 5, 2008, prior to  his first admission to the Hospital. Docket # 41. In pertinent part the consent form provided:

> If I understand I have suffered damages as a direct or indirect result or in any way related to diagnostic and/or therapeutic services offered by my physician and/or [the Hospital] physicians or by the Hospital, and as a result, I decide to file suit in court, I accept, consent, and agree to bring said claim solely and exclusively before the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Court.

Docket # 41-2, p. 2.

-------------------

Encyclopedia Britannica, Inc., 239 F.3d 385, 388 (1st Cir. 2001), or a Rule 12(b)(3), as maintained by other circuits, see  Atl Marine, 134 S.Ct. at 580. The Court, however, expressed no opinion on whether a party bringing an action for breach of contract might obtain dismissal under Rule 12(b)(6). Id.

Noting that Maldonado Falcón's signature did not appear on the separate signature line below the forum-selection clause, the Court summarily denied the motion. Because a signature is the "universal requisite of informed consent," and because Maldonado-Falcón did not "'signal[ ] his assent to the forum selection clause,'" Docket # 42 (quoting Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 22 (1st Cir. 2009)), the Court refused to enforce the forum-selection clause. Id.[2]

The Hospital promptly moved for reconsideration. It argues that Maldonado-Falcon did sign the consent form, "only that his signature was placed on the wrong field." Docket # 43, p. 2. His signature, the Hospital explains, appeared on the line for the "name of person giving consent." See Docket # 41-2.

The plaintiffs opposed. Conceding that "Maldonado-Falcón did sign the informed consent form," they nevertheless observe that "his signature was placed on the last page, page 3, away from the forum selection clause, which is buried in a single spaced paragraph in the middle of page 2." Docket # 46, p. 2. They also submit that Regulation No. 7504 (Regulation), which in pertinent part prohibits health care providers from including in informed-consent documents any forum-selection clauses, was in effect during Maldonado-Falcón's last three admissions to the Hospital.

**Standard of Review**

"The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted).  It is common ground that the moving party "must 'either clearly establish a manifest

---

[2]In denying the Hospital's motion, the Court assumed — without deciding — that the forum-selection clause was mandatory, rather than permissive. See Rivera, 575 F.3d at 16-17 (describing the difference between mandatory and  permissive forum selection clause). The Court emulates that assumption here.

error of law or must present newly discovered evidence.'" Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n. 2 (1st Cir. 2005) (quoting Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n. 2 (1st Cir. 2004)). It is also well settled that "[a] motion for reconsideration is not a vehicle for the introduction of arguments that could and should have been made to the district court earlier." Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc., 682 F.3d 26, 33 (1st Cir. 2012). Nor does Rule 59(e) "provide a vehicle for a party to undo its own procedural failures." Aybar v. Crispín-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (quoting Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir.1996)).

**Applicable Law and Analysis**

As said, the Court summarily denied the Hospital's request to enforce the forum-selection clause. For the reasons laid out below, the Hospital's motion for reconsideration does not upend that determination.

*Judicial Enforcement of Forum-Selection Clauses*

The analysis begins with the mechanics of judicial enforcement of forum-selection clauses. Because forum-selection clauses "are prima facie valid," M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972), they "carr[y] a strong presumption of enforceability." Marrero v. Aragunde, 341 F. App'x 656, 658 (1st Cir. 2009) (citation and internal quotation marks omitted).

In Bremen, the beacon by which courts must steer to determine a mandatory forum selection clause's enforceability, the Supreme Court listed four grounds for finding a forum-selection clause unenforceable:

(1) the clause was the product of "fraud or overreaching,"

(2) "enforcement would be unreasonable and unjust,";

(3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court,"; or

(4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,"

Huffington v. T.C. Group, Inc., 637 F.3d 18, 23 (1st Cir. 2011) (alterations in original and citations omitted) (construing and discussing Bremen). The party resisting its enforcement bears the "heavy burden" of persuading why a forum-selection clause should not be enforced. Bremen, 407 U.S. at 17.

As to the last condition, the First Circuit's 2009 decision in Rivera recognized that the Regulation, which was passed on May 12, 2008 — a week after Maldonado-Falcón's first admission to the Hospital — reflected Puerto Rico's strong public policy against forum-selection clauses in informed consent forms. See 575 F.3d at 23 (remarking that "the Regulation is persuasive evidence of Puerto Rico's public policy " against forum-selection clauses in admissions documents). Two years later, the Puerto Rico Supreme Court ratified Rivera's observation, finding that "forum selection clauses in the informed consent documents presented to patients . . . ha[ve] been validly banned in our legal system." García-Mones v. Groupo HIMA San Pablo, Inc., 875 F.Supp.2d 98, 105-06 (D.P.R. 2012) (citing Centro Médico del Turabo, Inc. v. Departamento de Salud, 181 P.R. Dec. 72, 77 n. 1 (2011)). And a phalanx of cases in this district have repeatedly enforced such a prohibition, expanding it to encompass "medical admissions forms" as well. Rodríguez v. Ryder Mem'l Hosp., Inc., No. 11-1905, --- F.Supp.2d ---- 2013 WL 2456215, at * 3 (D.P.R. June 6, 2013).[3]

---

[3]See Segura-Sánchez v. Hosp. Gen. Menonita, Inc., 953 F. Supp. 2d 344, 346 (D.P.R. 2013) (finding that forum-selection clause contained in documents to gain admission to hospital for emergency treatment was unenforceable as contrary to Puerto Rico public policy); Rodríguez, 2013 WL 2456215, at * 4("The [Puerto Rico] Supreme Court's statement . . . is clear: forum selection clauses are against public policy in informed-consent documents."); Prince v. Hosp. HIMA San Pablo-Caguas, 943 F. Supp. 2d 280, 284 (D.P.R. 2013) ("Certainly, the enactment of Regulation No. 7617 is a testament to the public policy of prohibiting the enforcement of forum selection clauses included in admissions documents for medical treatment."); Vázquez v. Hosp. Episcopal Cristo, No. 10-2216, 2011 WL 6748951, at *1 (D.P.R. Dec. 22, 2011) ("As noted by the Puerto Rico Supreme Court, Puerto Rico has

Here, no one disputes that the consent form containing the forum-selection clause that Maldonado-Falcón signed in May 2008 fell under the Regulation's aegis. And for good reason: The Regulation, as noted earlier, "prohibits a health care provider from including in informed consent documents any '[a]spects about any decision regarding the possibility of any act of malpractice by a provider' or 'legal clauses foreign to the sphere or field of medicine or health . . . such as, but not limited to, forum selection clauses.'" <u>Rivera</u>, 575 F.3d at 23 (citing Article 13, Section 8C of Regulation 7504 of May 12, 2008 (alterations in original)). Puerto Rico's strong public policy against forum-selection clauses in admissions documents would therefore apply here; and the clause would violate that public policy. The upshot is that the clause would be unenforceable.

But there is a wrinkle. Maldonado-Falcón's first visit to the Hospital took place on May 5, 2008, a week <u>before</u> the Regulation took effect. <u>See</u> <u>Rivera</u>, 575 F.3d at 23  (finding that "the Office of the Patient's Advocate of Puerto Rico passed the Regulation on "May 12, 2008"). And in <u>Rivera</u>, the First Circuit explicitly declined to give the Regulation retroactive effect. <u>See</u> <u>id.</u> (reasoning that "the default position under Article 3 of the Puerto Rico Code is that laws 'shall not have a retroactive effect unless they expressly so decree.'" (citing P.R. Laws Ann. tit. 31, § 3)); <u>accord</u> <u>Rodríguez</u>, 2013 WL 2456215, at *2.

However, the plaintiffs say that according to the amended complaint, Maldonado-Falcón was also admitted to the Hospital on July 29, September 10, and October 29, 2009. <u>See</u> Docket # 6 ¶¶ 11-12. His last three visits to the Hospital, they correctly observe, took place well over a year from his initial May 5, 2008 admission. And the Regulation was irrefragably in full force during that time frame.

---

statutorily prohibited forum selection clauses presented to patients as part of the informed consent process in obtaining medical treatment." (citations omitted)).

In its reply, the Hospital discloses, for the first time, two additional consent forms (with embedded forum-selection clauses) for the July and October 2009 admissions. And the Regulation, the Hospital acknowledges, was already in full force at that time.[4] Downplaying this problem, the Hospital demurs that the amended complaint makes clear "that any subsequent admission, medical treatment or intervention of Maldonado-Falcón at [the Hospital] was the direct result of the alleged negligent treatment received during the May 2008 surgical intervention at [the Hospital]." Docket # 55, p. 7. And because the May 2008 "intervention happened before the existence of [the Regulation]," goes the argument, "there is no need to evaluate the applicability or not of the prohibition included in such regulation." Id., p. 8. This argument lacks force.

As an initial matter, the Hospital three-sentence proffer, which contains neither a supporting authority nor a developed argument makes waiver a real possibility. See, e.g., CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1525-26 (1st Cir.1996) (three sentences with three undiscussed citations did not defeat waiver). But even putting that flaw aside, the Hospital's argument fails. If, as the Hospital says, the last three hospital visits were covered by the May 2008 consent form's forum-selection clause, then why did the Hospital find it necessary to provide Maldonado-Falcón with additional consent forms for his subsequent hospitalizations — which, again took place well over a year from his May 2008 visit?

It stands to reason that each hospital admission presented myriad risks and unforeseen consequences. Such medical realities could explain why the Hospital (quite wisely) thought it necessary to furnish its patients with new consent forms for each additional admission, regardless of whether that admission "related back" to the initial visit. In all events,

_____

[4]Contrary to the May 5, 2008 consent form, none of the 2009 consent forms produced by the Hospital was signed by Maldonado-Falcón, because he appeared to be "incapacitated" at that time. See Docket # 60-1, 60-2. They were apparently signed by his sister-in-law. (While the plaintiffs dispute this, such a dispute is of no moment.)

countenancing the Hospital's argument would produce absurd results. Suppose that Maldonado-Falcón visited the Hospital today with symptoms similar to those exhibited in 2008. Can the May 2008 forum-selection clause bind him today — five years later? Of course not. Such a result would be nonsensical.

For these reasons, the Court rejects the Hospital's broad and implausible argument, finding instead that, barring the May 2008 admission, Maldonado-Falcón's visits to the Hospital took place during the Regulation's effectiveness. And because the forum-selection clauses contained in the 2009 consent forms run contrary to Puerto Rico's public policy, they are unenforceable. See note 3 above (collecting cases on this point).

That is not the end of the matter, however. The fact remains that the Regulation could not bar enforcement of the May 2008 forum-selection clause, because — as noted earlier — the Regulation lacks retroactive affect. But because the Court agrees with the plaintiffs that forum-selection clause contained in the May 2008 consent form was a product of "overreaching" — thus being unenforceable —  the Court need not dwell on that point.[5] After all, "[t]he simplest way to decide a case is often the best." Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 248 (1st Cir. 2013) (quoting Chambers v. Bowersox, 157 F.3d 560, 564 n.4 (8th Cir. 1998) (R. Arnold, J.)).

While "overreaching" has been described as a "nebulous concept at best," Haynsworth v. The Corporation, 121 F.3d 956, 965 (5th Cir.1997), the Rivera court defined it as one "party's unfair exploitation of its overwhelming bargaining power or influence over the other party." 575 F.3d at 21 (construing concept).[6] "But the mere fact of this inequality," the First Circuit

---

[5]By like token, the Court need not consider a recent non-binding, state-court decision submitted by the Hospital that invalidates the Regulation on procedural grounds.

[6] Because Puerto Rico follows the federal standard enunciated in Bremen, see Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 92 (1st Cir. 2010) (citing Unisys P.R. v. Ramallo Bros. Printing, Inc., 128 P.R. Dec. 842, 856-57 (1991)), the Court need not decide whether, for Erie

clarified, "is not enough to render an agreement unenforceable." Id. (citations omitted). The party bearing the burden of persuading — i.e., the one resisting a forum-selection clause's enforcement —  must marshal "some evidence that the party has exploited this bargaining power in a way that the courts will not tolerate." Id. (quoting Outek Caribbean Distrib., Inc. v. Echo, Inc., 206 F.Supp.2d 263, 267 (D.P.R. 2002)).

The plaintiffs have shouldered such a heavy burden here. To begin with, "there are certainly suggestions of overreaching here." Id. As the plaintiff in Rivera, Maldonado-Falcón's "relationship with the [H]ospital grew out of a grave medical condition," which supports the inference that  "[h]e was likely more focused on that medical condition than the significance of the documents that he was asked to sign. He was not thinking about possible lawsuits." Id.

Yet under Rivera, the above circumstances, without more, fall short of overcoming the "presumption in favor of enforcing a forum selection clause . . . ." Id. at 22. The court explained:

> The language of the clause was clear. The clause was in bold print and marked off from the rest of the one-page form by a special box. It was not "buried in fine print" or otherwise obscured. The clause required the patient to signal his assent by placing his initials next to it.

Id. (citing Wilkerson ex rel. Estate of Wilkerson v. Nelson, 395 F.Supp.2d 281, 287 (M.D.N.C.2005)). The court further added that the Rivera plaintiff had "signaled his assent to the forum selection clause on two separate occasions . . . ." Id.

Here, however, the clause was neither in bold nor marked off from the rest of the page by "a special box." See id. Nor did it require "the patient to signal his assent by placing his initials next to it," id. (citation omitted and emphasis added); rather, as properly argued by the plaintiffs, Maldonado-Falcón's signature was placed on the last page (page three), away from

purposes, the forum-selection clause "is enforceable as 'procedural' and look to a federal test of validity or instead treat it as 'substantive' and look to pertinent state law . . . ." Id.

the forum-selection clause, which was buried in a single-spaced paragraph in the middle of page two. And while the language of the clause was arguably clear, it was nonetheless "'buried in fine print' or otherwise obscured." Id. Moreover, unlike Rivera, Maldonado-Falcón "signaled his assent" to the forum-selection clause only once. Id. Even so, his signature did not even appear on the signature line. Compare Wilkerson, 395 F.Supp.2d at 287 (finding "no claim of ambiguity" where "[p]laintiff signed the form on the separate signature line before the arbitration clause"); Wilcox v. Lexington Eye Inst., No. 53871-3-I, 2005 WL 1964481, at *2-3 (Wash .Ct. App. Aug.15, 2005) (rejecting argument that forum-selection clause was unenforceable because of "undue influence," and "overweening bargaining power," where plaintiff had the opportunity to read the consent form in advance of surgery and again on the day of the procedure . . ., and plaintiff's signature appeared directly underneath the forum selection provision). What is more, Maldonado-Falcón — contrary to Rivera — had neither the chance to "consult an attorney" regarding the forum-selection clause nor the opportunity to "consider his assent to it outside the pressures of a hospital setting." Rivera, 575 F.3d at 22. Indeed, Maldonado-Falcón visited the Hospital in an emergency state after feeling "sharp stomach pains."

These crucial differences set this case apart from Rivera. The Court is, therefore, convinced that the forum-selection clause contained in the May 2008 consent form was a product of "overreaching." Accordingly, the Court refuses to enforce it.

The Hospital resists this conclusion. But Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387 (1st Cir. 2001), and Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991), much touted by the Hospital, do not compel a contrary conclusion. It is true that those decisions found no "overreaching." Yet they arose in a wholly different context. While the forum-selection clause in Silva appeared in small print on the back of the contract, the contract at play there was an encyclopedia sales commission contract. Similarly, the clause in the

**CIVIL NO. 12-1907 (SEC)**                                                    **Page 11**

<u>Carnival</u> case — which also appeared in the fine print on the back of the contract — involved a passenger ticket.

Those scenarios are a far cry from cases like <u>Rivera</u>, and the case at hand, where "there are certainly suggestions of overreaching . . . ." <u>Rivera</u>, 575 F.3d at 21. Contrary to the plaintiffs in <u>Silva</u> and <u>Carnival</u>, Maldonado-Falcón's "relationship with the [H]ospital grew out of a grave medical condition," which supports the inference that "[h]e was likely more focused on that medical condition than the significance of the documents that he was asked to sign. He was not thinking about possible lawsuits." <u>Id.</u> "This reality in cases like this one undoubtedly" explain why Puerto Rico enacted the Regulation. <u>Id.</u> at 21-22. The May 2008 forum-selection clause is unenforceable.

**Conclusion**

For the reasons stated, the Hospital's motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of February, 2014.

> *S/ Salvador E. Casellas*
> SALVADOR E. CASELLAS
> U.S. Senior District Judge