IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAFAEL MALDONADO-FALCON, ET AL.,

    Plaintiffs,

          v.

HOSPITAL ESPANOL AUXILIO MUTUO DE PUERTO RICO, INC., ET AL.,

    Defendants.

Civil No. 12-1907 (SEC)

**MEMORANDUM AND ORDER**

    Before the Court are the codefendant's summary-judgment motion, Docket # 83, and the plaintiffs' opposition thereto. Docket # 87. After reviewing the filings and the applicable law, this motion is **DENIED**.

**Background**

    This diversity medical malpractice action stems from the alleged misdiagnosis and inadequate treatment of Rafael Maldonado Falcón. The defendants are David Solis Lopez and Diego Solis Lopez, the doctors who treated Maldonado-Falcón; and Hospital Español Auxilio Mutuo de Puerto Rico, Inc. (Auxilio Mutuo), the local hospital where the doctors treated Maldonado Falcón. The Court recounts below the background leading up to the alleged medical malpractice, reserving for later discussion a more detailed dissertation of the facts pertinent to the analysis. See RTR Techs., Inc. v. Helming, 707 F.3d 84, 87 (1st Cir. 2013). In doing so, and insofar as the parties quarrel over what occurred, the Court "adhere[s] to the plaintiff's version in keeping with . . . [its] role in reviewing a . . . [motion for] summary judgment." Ahmed v. Johnson, 752 F.3d 490, 492 (1st Cir. 2014).

    On May 9, 2008, after seeking treatment with the Solis doctors, Maldonado Falcón was admitted to Auxilio Mutuo "with a diagnosis of pancreatic head mass and was discharged on

**Civil No. 12-1907 (SEC)**                                                                                          **Page 2**

June 15, 2008 with a diagnosis of pancreatic cancer . . . ." Docket # 6, ¶ 3. Though he underwent surgery during that period, his condition "did not improve and he continued experiencing pains in the abdominal area . . . ." Id. ¶¶ 9-10. He was admitted to Auxilio Mutuo several times in 2009; and on November 17, 2009, he was last discharged. Shortly thereafter, Maldonado-Falcón sought treatment at a New York hospital, where doctors ruled out the cancer diagnosis, diagnosing him instead with "epigastric pain, a serious, infected abscess and liver inflammation and a severe depression." Id. ¶ 23.

This action ensued. Docket # 1. The plaintiffs, Maldonado Falcón and his sons, claim medical malpractice and breach of the duty of care, seeking to recover damages under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142. The nub of their medical malpractice claim is that the defendants incorrectly and negligently diagnosed Maldonado-Falcón with pancreatic cancer. See generally Docket # 6.

After some pretrial skirmishing, e.g., Maldonado-Falcon v. Hosp. Espanol Auxilio Mutuo De Puerto Rico, Inc., No. 12-1907, 2014 WL 609664 (D.P.R. Feb. 18, 2014), Auxilio Mutuo moved for summary judgment, see Fed. R. Civ. P. 56, mustering two contentions. Its primary argument—spanning 20 pages, Docket # 85, pp 1-20—mounts a statute-of-limitations defense, couched on the alleged untimeliness of the plaintiffs' second tolling letter. Docket # 83, p. 2. Alternatively, it posits that the plaintiffs lack competent expert testimony to establish a deviation from the standard of care applicable to hospitals. Id. at 5. The plaintiffs timely opposed, responding, first, that because both tolling letters were timely, they interrupted the prescriptive period. Docket # 86, p. 2. They maintain, second, that because genuine issues of material fact preclude summary-judgment resolution of Auxilio Mutuo's liability, the fall-back argument is unamenable to disposition via summary judgment.

The Court addresses these matters sequentially.

**Civil No. 12-1907 (SEC)**                                                                 Page 3

**Discussion**

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam). "The moving party is said to bear both the initial burden of production and the ultimate burden of persuasion on the motion." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). But where, as here, the movant "lacks the ultimate burden of persuasion at trial," its initial burden of production can be satisfied by "point[ing] to evidentiary materials already on file—such as answers to interrogatories, affidavits, or portions of depositions—that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Id.  (footnote omitted) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Under Puerto Rico law, which governs this diversity action, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), a medical malpractice plaintiff must demonstrate "(1) the basic norms . . . of knowledge and medical care applicable to general practitioners or specialists; (2) proof that the medical personnel failed to follow these basic norms in the treatment of a patient; and (3) a causal relation between the act or the omission of the physician and the injury by the patient." Santana-Concepcion v. Centro Medico del Turabo, Inc., 768 F.3d 5, 12 (1st Cir. 2014) (quoting Santiago v. Hosp. Cayetano Coll y Toste, 260 F.Supp.2d 373, 381 (D.P.R. 2003)). Puerto Rico law also furnishes the applicable statute of limitations, "as well as the concomitant tolling provisions . . . ." Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 46 (1st Cir. 2009) (citing Valedon Martinez v. Hosp. Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1133 (1st Cir. 1986)); see P.R. Laws. Ann. tit. 31, § 5303 (providing that "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor").

**Civil No. 12-1907 (SEC)**                                                                                      **Page 4**

The analysis begins with the swift jettison of the statute-of-limitations defense. Of course, the plaintiffs can forestall the entry of summary judgment by showing that genuine issues of material fact exist about whether their tort claims were "filed within the limitations period," <u>Santana-Concepcion</u>, 768 at 9, which, under Article 1868(2) of the Civil Code, P.R. Laws Ann. tit. 31, § 5298(2), is one year. Here they easily satisfy that obligation — in point of fact, it is Auxilio Mutuo who falls miles short of shouldering its initial burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law on that ground. <u>See</u> <u>Carmona</u>, 215 F.3d at 133 ("A nonmoving party, even though having the ultimate burden at trial, may indeed have no obligation to offer evidence supporting its own case unless the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact."). It suffices to say that its premise that the limitations period was first interrupted on November 1, 2010 (the first tolling letter's date) is factitious; the statutory clock "is interrupted on the date on which the defendant <u>receives</u> the extrajudicial claim. <u>Tokyo Marine & Fire Ins. Co. v. Perez & Cia., De Puerto Rico, Inc.</u>, 142 F.3d 1, 4 (1st Cir. 1998) (emphasis added); <u>Moran Vega v. Cruz Burgos</u>, 537 F.3d 14, 22 (1st Cir. 2008). And the summary-judgment record makes manifest that the first tolling letter, whose timeless is undisputed, was delivered—and thus presumably received, see <u>Phelan v. Wyoming Associated Builders</u>, 574 F.3d 1250, 1259 (10th Cir. 2009) (interpreting "received" to mean "postmarked")—on 4 November 2010, Docket # 1-1; the second tolling letter was in turn received on 3 November 2011, Docket # 1-2; and the plaintiffs filed suit on November 1, 2012. Docket # 1. Because both tolling letters succeeded in tolling the prescriptive period, this action is irrefragably timely. So the statute-of-limitations argument lacks merit.

The same holds true for Auxilio Mutuo's fall-back argument. As relevant here, the deviation of the standard of care imputed to Auxilio Mutuo by the plaintiffs' expert is a "[m]arked deviation from established hospital utilization and quality management processes, when there is no evidence that despite repeated readmissions in a short period of time—this fact

**Civil No. 12-1907 (SEC)**                                                                 **Page 5**

did not trigger at least a fact-finding investigation by the [hospital's] Medical Director." Docket # 84-4, p. 14; see Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 113 (1st Cir. 2010 (noting that "[i]n order to determine the applicable standard of care in a medical malpractice action . . . a trier of fact will generally need the assistance of expert testimony"). Auxilio Mutuo's summary-judgment motion challenges only the reliability of the scientific literature that the plaintiffs expert considered in reaching his opinion. Docket # 85, p. 25; see Fed. R. Ev. 702.

But Auxilio Mutuo never filed a motion to exclude, viz. a motion in limine, the plaintiffs' expert testimony on this front, see U.S. ex rel. Jones v. Brigham & Women's Hosp., 678 F.3d 72, 84 (1st Cir. 2012) (noting that, at the summary-judgment stage, the movant "filed a motion in limine to preclude Relator from offering certain testimony and evidence, including aspects of the proposed testimony from . . . expert witness reports"), thereby leaving the Court ill-equipped to perform, at least at the summary-judgment stage, its so-called gatekeeping function and "ensure that the expert's testimony . . . rests on a reliable foundation . . . ." Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 57 (1st Cir. 2010) (citations and internal quotation marks omitted). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Having omitted filing a motion limine on this front, Auxilio Mutuo cannot compel a concomitant summary-judgment ruling on the reliability of the plaintiffs' expert testimony. See U.S. ex rel. Jones, 678 F.3d at 84; cf. New England Surfaces v. E.I. du Pont de Nemours & Co., 546 F.3d 1, 7 (1st Cir.) ("even assuming the motion in limine was properly granted, the district court had no business moving from there to a dismissal of the remaining claims because no summary judgment motion . . . was pending"), decision clarified on denial of reh'g, 546 F.3d 11 (1st Cir. 2008).

In all events, Auxilio Mutuo's single-minded focus on the alleged paucity of "scientific literature" does not carry the day where, as here, the expert based a seemingly straightforward

opinion on his own clinical experience and medical education. Dockets ## 84-4, 86-1; see also Feliciano-Hill v. Principi, 439 F.3d 18, 25 (1st Cir. 2006) (rejecting assertion that expert testimony "did not meet the standard of Daubert and Rule 702 because the doctor failed to support his diagnosis with citations to published authorities"); Pages-Ramirez, 605 F.3d at 116 (admitting expert testimony when "[h]er knowledge 'rests on a reliable foundation,' i.e., her medical education and many years of experience in the field") (internal citation and quotation marks omitted). Auxilio Mutuo may, of course, file a motion in limine; but it shall contain a developed discussion with supporting authorities, D.P.R. Civ. R. 7(a), for "[l]itigants should not seriously expect to obtain a remedy without doing the necessary leg work first." Silverstrand Investments v. AMAG Pharmaceuticals, Inc., 707 F.3d 95, 107 (1st Cir. 2013). For now, however, its summary-judgment request is denied.

### Conclusion

For the reasons stated, Auxilio Mutuo's summary-judgment motion is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of December, 2014.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge